1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   QUICKIE TIE-DOWN ENTERPRISES,              No.  2:24-cv-00799-DAD-JDP
     LLC,
12
                      Plaintiff,
13                                              ORDER GRANTING DEFENDANTS'
           v.                                   MOTION TO DISMISS
14
     USA PRODUCTS GROUP, INC., et al.,          (Doc. No. 28)
15
                      Defendants.
16

17

18         This matter is before the court on defendants' motion to dismiss certain claims filed on

19   behalf of defendants Stephen Jackson and USA Products Group, Inc. ("USA Products").  (Doc.

20   No. 28.)  On August 2, 2024, the defendants' motion was taken under submission pursuant to

21   Local Rule 230(g).  (Doc. No. 35.)  For the reasons explained below, the court will grant

22   defendants' motion to dismiss with leave to amend also being granted.

23                                    **BACKGROUND**

24         On March 14, 2024, plaintiff Quickie Tie-Down Enterprises, LLC filed this patent

25   infringement action against defendants.  (Doc. No. 1.)  On May 7, 2024, defendants filed a

26   motion to dismiss.  (Doc. No. 13.)  On May 28, 2024, plaintiff filed its operative first amended

27   complaint ("FAC"), which rendered moot defendants' motion to dismiss the original complaint.

28   (Doc. No. 24.)  In its FAC, plaintiff alleges the following.

                                            1

1         Plaintiff is a manufacturer, distributor, and seller of tie-down apparatuses.  (Doc. No. 24 at

2  ¶ 10.)  On July 25, 2000, Gerald Kingery, the founder of plaintiff's predecessor-in-interest

3  Quickie Tie-Down Enterprises, Inc., was issued a patent known as U.S. Patent No. 6,092,791 for

4  a ratcheting tie-down system.  (*Id.*at ¶¶ 11, 12.)  In 1999, Quickie Tie-Down Enterprises, Inc.,

5  entered into negotiations with defendants Stephen Jackson and USA Products for acquisition of

6  the entire Quickie Tie-Down business.  (*Id.* at ¶ 14.)  Defendant Jackson is the sole officer and

7  sole shareholder of defendant USA Products, and defendant USA Products is closely held and

8  controlled by defendant Jackson who makes all corporate decisions for it.  (*Id.*at ¶ 54.)  However,

9  this asset purchase fell through and defendant Jackson did not acquire Gerald Kingery's patents

10  or the rights to them.  (*Id.* at ¶ 16.)  Gerald Kingery's son Kenneth Kingery took over Quickie

11  Tie-Down Enterprises, Inc. after his father's death in 2004.  (*Id.*  at ¶ 17.)  Plaintiff

12  commercializes and sells products covered by Gerald and Kenneth Kingery's patents.  (*Id.* at ¶

13  19.)

14         In 2005, plaintiff and defendant USA Products entered into a patent license to license

15  certain tie-down apparatus patents to allow defendant USA Products to practice and

16  commercialize those patents.  (*Id.* at ¶ 20.)  In the process of commercializing, defendant USA

17  Products manufactured, sold, and imported licensed tie-down systems in the United States.  (*Id.* at

18  ¶ 21.)  Plaintiff continued this business relationship by confidentially providing defendant USA

19  Products with products and inventions in development, with defendant USA Products allowing

20  plaintiff use of its engineering firm to create technical drawings for planned products.  (*Id.* at ¶¶

21  22, 23.)  In December 2006, defendant Jackson informed plaintiff that he intended to file patents

22  for inventions by Mr. Kenneth Kingery that had been disclosed to defendants confidentially,

23  specifically a rope guide, a socket drive, and a push button release for a ratcheting tie down.  (*Id.*

24  at ¶¶ 25–27.)  Defendant Jackson represented to Mr. Kenneth Kingery that he would be listed as

25  an inventor on the patent application but then filed the patent application listing himself,

26  defendant Jackson, as the sole inventor.  (*Id.* at ¶¶ 31, 32.)  In response, in April 2012, plaintiff

27  attempted to terminate the 2005 license with defendant USA Products due to its failure to pay

28  */////*

royalties due.  (*Id.* at ¶ 38.)  The license was eventually terminated, but defendant USA Products continued to sell tie-down products.  (*Id.* at ¶ 40.)

Plaintiff developed a parachute cord tie-down invented by Mr. Kenneth Kingery which became United States Patent No. 9,770,071 ("the '071 patent").  (*Id.* at ¶ 44.)  Defendants Jackson and USA Products received technical drawings and a prototype of that parachute cord tie-down in confidence.  (*Id.*)  Defendant USA Products created a separate prototype of that parachute cord tie-down at defendant Jackson's direction.  (*Id.* at ¶ 45.)  Plaintiff had informed defendants that they did not have permission to make, use, sell, or otherwise commercialize the parachute cord tie-down.  (*Id.* at ¶ 46.)  Defendant USA Products described its parachute cord tie-down with the phrase "better than bungee" which plaintiff had planned to brand its parachute cord tie-down with.  (*Id.* at ¶ 47.)  Defendants then sold a product which plaintiff alleges infringed on its '071 patent titled "6' Better Than Bungee Tie Down" ("the infringing product").  (*Id.* at ¶ 64.)  Defendants had full knowledge of plaintiff's patent portfolio when they created this parachute cord tie-down product.  (*Id.* at ¶ 52.)

Based upon these allegations, in its FAC plaintiff asserts the following four claims:  (1) willful infringement of plaintiff's '071 patent in violation of 35 U.S.C. §§ 271, 284, 285 against defendant USA Products; (2) false marking of an infringing product as a patent article in violation of 35 U.S.C. § 292 against defendant USA Products;  (3) unfair competition in violation of 15 U.S.C. § 1125 ("the Lanham Act") against all defendants; and (4) induced infringement of the '071 patent against defendant Jackson.  (*Id.* at ¶¶ 56–104.)

On June 28, 2024, defendants filed the pending motion to dismiss.  (Doc. No. 28.)  On July 22, 2024, plaintiff filed its opposition to that motion.  (Doc. No. 33.)  On August 1, 2024, defendants filed their reply thereto.  (Doc. No. 34.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

# ANALYSIS

## A.      Willful Patent Infringement

In their pending motion to dismiss, defendants argue that plaintiff's willful patent infringement claim should be dismissed because plaintiff has only alleged that defendant USA Products knew of plaintiff's '071 patent and not that it willfully infringed upon it.  (Doc. No. 28-1 at 6.)  In its opposition, plaintiff contends that it has alleged that defendant USA Products knew of the '071 patent, that after obtaining that knowledge defendant USA Products took infringing actions, and that defendant USA Products knew, or should have known, that sales of its product

4

was infringement of the '071 patent.  (Doc. No. 33 at 5–6.)  Plaintiff argues that these allegations, taken together, state a cognizable claim for willful patent infringement.  (*Id.*)  In reply, defendants argue that, while plaintiff alleges that both defendants Jackson and USA Products had received technical drawings and a prototype of what would become the subject of the '071 patent, plaintiff has not alleged that either defendant became aware of the issuance of the '071 patent in 2017. (Doc. No. 34 at 3.)[1]

Allegations of willful infringement allow for enhanced damages in connection with a claim of direct or indirect infringement.  *See Warn Indus., Inc. v. Agency 6 Inc.*, 660 F. Supp. 3d 924, 934 (E.D. Cal. 2023) (citing 35 U.S.C. § 284).  "Some district courts . . . have treated willful infringement as a distinct claim that can be subject to a motion to dismiss."  *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 642 (N.D. Cal. 2022) (citing *Boston Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 493 (D. Del. 2019); *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-EJD, 2017 WL 2311407, at *5 (N.D. Cal. May 26, 2017)).  "With respect to willfulness, . . . specific intent to infringe [must] be pled with plausibility.  This means that knowledge of the patent and knowledge of infringement must be pled with plausibility."  *Id.* at 643.  "The complaint must contain allegations that the accused infringer had specific 'knowledge of the asserted patent.'" *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088, 1095–96 (N.D. Cal. 2022) (quoting *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021)). "To plead a claim for willful infringement, a plaintiff must allege that the accused infringer 'actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.'"  *Entropic Commc'ns, LLC v. Comcast Corp.*,

---

[1]  Although this claim is brought by plaintiff only against defendant USA Products, the court will also observe that plaintiff has alleged defendant Jackson had pre-suit knowledge of the '071 patent and will consider that allegation in determining whether plaintiff has sufficiently alleged that defendant USA Products had such knowledge.  *See Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*, 665 F. Supp. 3d 1214, 1222 (S.D. Cal. 2023) (finding that the plaintiffs' allegations that the defendant's founder had access to information about asserted patents was sufficient to find that the defendant had pre-suit knowledge) (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1375 (Fed. Cir. 2017) (finding that, in the context of induced infringement, the plaintiff's allegation that the defendant had hired former employees with direct knowledge of an infringed patent was sufficient to plausibly allege pre-suit knowledge)).

702 F. Supp. 3d 954, 965 (C.D. Cal. 2023) (quoting *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017)).

Defendants contend that plaintiff alleges in conclusory fashion only that defendants knew of the patented invention, which they argue is insufficient to state a cognizable claim for willful patent infringement.  (Doc. No. 28-1 at 6.)  The Supreme Court has held that enhanced damages are "generally reserved for egregious cases of culpable behavior."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016).  District courts within the Ninth Circuit are not in agreement as to whether a plaintiff must plead "egregious" behavior on the part of a defendant in seeking enhanced damages in connection with an alleged willful infringement.  Some district courts have held that, "to plead willful infringement adequately, a plaintiff must also allege facts showing an 'egregious case[] of misconduct beyond typical infringement[]'" such that allegations of knowledge alone are insufficient to state a claim for willful infringement.  *Entropic Commc'ns, LLC*, 702 F. Supp. 3d at 965 (quoting *Document Sec. Sys., Inc. v. Nichia Corp.*, No. 19-cv-08172-JVS-JEM, 2020 WL 3881623, at *3 (C.D. Cal. Mar. 4, 2020)); *see also Dali Wireless, Inc.*, 638 F. Supp. 3d at 1095–1100 (finding that willfulness requires allegations of the defendant's knowledge of a patent, specific intent to infringe, and action despite a risk of infringement that was either known or so obvious it should have been known) (citing *Arctic Cat Inc.*, 876 F.3d at 1371).  Other district courts have instead concluded that egregiousness need not be alleged in a complaint, but only that plaintiff's "allegations of an infringer's knowledge of the patent and of infringement *must raise a plausible inference* that the defendant had the specific intent to infringe[]" in order for plaintiff to state a claim for willful patent infringement.  *Sonos, Inc.*, 591 F. Supp. 3d at 644 (emphasis added); *see also Core Optical Techs., LLC v. Juniper Networks, Inc.*, 562 F. Supp.3d 376, 380–81 (N.D. Cal. 2021) ("[T]he ultimate question whether the alleged conduct is sufficiently egregious to warrant enhanced damages is for the [c]ourt to decide at summary judgment or after trial[]"); *Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*, 665 F. Supp. 3d 1214, 1226 (S.D. Cal. 2023) (collecting both in-circuit and out-of-circuit cases and finding that a "plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer:  (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it

6

1   infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct

2   amounted to infringement of the patent.")[2]  Nevertheless, under either pleading standard adopted

3   by district courts within the Ninth Circuit a plaintiff is required to allege more than merely

4   infringement and knowledge of the patent-in-suit, but also the defendant's knowledge that its

5   conduct would amount to infringement in order to state a claim for willful infringement.  *See,*

6   *e.g., BSD Crown, Ltd. v. Amazon.com, Inc.*, 684 F. Supp. 3d 993, 1002 (N.D. Cal. 2023) (citing

7   both standards to establish that knowledge of infringement is a pleading requirement for a willful

8   infringement claim).

9         Plaintiff contends that it has alleged knowledge, infringement, and that the defendants

10   knew, or should have known, that their actions infringed the '071 patent.  (Doc. No. 33 at 5–6.)

11   In its FAC, plaintiff alleges that it had provided defendants with technical drawings and a

12   prototype of the device that would later became the subject of the '071 patent.  (Doc. No. 24 at

13   ¶ 44.)  Plaintiff also alleges that defendants were aware of plaintiff's entire patent portfolio and

14   that it was seeking patent protection for the parachute tie-down product at issue in this case.  (*Id.*

15   at ¶¶ 52, 53.)  Allegations that defendants were generally aware of plaintiff's patent portfolio are,

16   however, insufficient to support a claim of specific knowledge of plaintiff's '071 patent, and

17   plaintiff does not allege any facts showing that defendants had direct and specific knowledge of

18   that patent.  *See Sonos, Inc.*, 591 F. Supp. 3d at 643 ("Mere knowledge of a 'patent family' or the

19   plaintiff's 'patent portfolio' is not enough[]"); *see also Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-

20   00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (finding that allegations of a

21   /////

---

22   [2]  The decision in *Valinge Innovation AB v. Halstead New England Corporation*, which *Fate*
23   *Therapeutics* relies upon, is instructive as to what is required for a showing of egregious behavior
     beyond mere knowledge of the patent and knowledge of infringement.  *Valinge Innovation AB v.*
24   *Halstead New England Corp.*, No. 16-cv-01082-LPS-CJB, 2018 WL 2411218, at *8 (D. Del.
     May 29, 2018), *report and recommendation adopted*, No. 16-cv-01082-LPS-CJB, 2018 WL
25   11013901 (D. Del. Nov. 6, 2018) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826–27 (Fed.
     Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 517
26   U.S. 370 (1996)).  In *Valinge Innovation AB*, the district court noted that, when evaluating
     egregiousness, courts ordinarily consider factors such as post-litigation behavior, duration of
27   misconduct, whether the infringer deliberately copied ideas or designs, or whether defendant
     attempted to conceal its misconduct.  *Valinge Innovation AB*, 2018 WL 2411218, at *8.
28

7

1    patent portfolio and long-term collaboration are insufficient to establish knowledge).[3]  The court

2    thus concludes that plaintiff has not sufficiently alleged direct knowledge of its '071 patent by

3    defendant USA Products or defendant Jackson.

4         Plaintiff puts forward the alternative allegation that defendants were willfully blind to the

5    '071 patent in an attempt to satisfy the knowledge requirement of its willful infringement claim.

6    (Doc. No. 24 at ¶ 69); *see BSD Crown, Ltd.*, 684 F. Supp. 3d at 1004 n.3 (finding that willful

7    blindness is a "theory of knowledge").  "Willful blindness requires both that:  '(1) The defendant

8    subjectively believes that there is a high probability that a fact exists and (2) the defendant must

9    have taken deliberate actions to avoid learning of that fact.'"  *Mediatek, Inc. v. NXP*

10   *Semiconductors N.V.*, No. 21-cv-04969-GW-AFM, 2021 WL 8875772, at *3 (C.D. Cal. Nov. 17,

11   2021) (quoting *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).  However,

12   plaintiff does not allege conduct on the part of defendants indicating they were attempting to

13   avoid knowledge of the '071 patent's contents and their infringement, but instead presents only

14   vague and insufficient allegations that defendants had access to plaintiff's prototype and technical

15   drawings.  *See Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:16-cv-01400-SI, 2017 WL 2543811,

16   at *5 (D. Or. June 12, 2017) (finding no willful blindness where the plaintiffs alleged only that

17   the defendant had accessed the patent applications and copied the technology of the patents-in-

18   suit, but not that the defendant had taken action to avoid learning of the issuance of the patents-in-

19   suit); c*f. Corephotonic, Ltd. v. Apple, Inc.*, No. 17-cv-06457-LHK, 2018 WL 4772340, at *9

20   (N.D. Cal. Oct. 1, 2018) (finding willful blindness was properly stated where the plaintiff had

21   alleged that the defendant was aware of the plaintiff's technology and patent applications, had

22   cited to an asserted patent, had told the plaintiff that they did not want to be sent further patents,

23

24   ---
[3]  The court notes that, although plaintiff does allege in the FAC that "[d]espite this notice,
[d]efendants infringed the '071 [p]atent," plaintiff does not allege of what "this notice" consisted.
25   (Doc. No. 24 at ¶ 73.)  If, for example, plaintiff had sent a cease-and-desist letter or other notice
to defendants, then the knowledge requirement for willful infringement may be sufficiently pled.
26   *Sonos, Inc.*, 591 F. Supp. 3d at 645 ("A patent plaintiff can, however, plead the material elements
of willful infringement, simply by sending a cease-and-desist letter that explains why the accused
27   product infringes and giving the infringer a fair chance to cease or to obtain a license.")
However, plaintiff's FAC does not allege the sending of any such notice or its equivalent.
28

and the plaintiff had sent them notices of infringement).  Therefore, the court concludes that plaintiff has not sufficiently alleged defendants' knowledge pursuant to a willful blindness theory.

Because plaintiff has not adequately alleged defendants' knowledge of the '071 patent, it has failed to allege willful infringement under either pleading standard employed by district courts in the Ninth Circuit with respect to such a claim.  *See Sonos, Inc.*, 591 F. Supp. 3d at 646 (dismissing the plaintiff's willful infringement claim when knowledge was not alleged regardless of whether egregiousness was alleged); *Dali Wireless, Inc.*, 638 F. Supp. 3d at 1099–1100 (dismissing the plaintiff's willful infringement claim when knowledge was not alleged and finding further that egregiousness was not alleged).  Accordingly, the court will dismiss plaintiff's claim 1 to the extent it asserts liability for willful infringement.  However, defendants have not moved to dismiss plaintiff's claim 1 insofar as it states a claim for relief for direct infringement. (*See* Doc. No. 24 at 9 (describing the claim as a cause of action for infringement); Doc No. 24 at ¶ 75 (alleging separately that plaintiff is entitled to "enhanced damages" because the alleged infringement was willful)); *see, e.g., Dali Wireless, Inc.¸* 638 F. Supp. 3d at 1101 (dismissing "the allegations of willful infringement"); *Playvuu, Inc. v. Snap, Inc.*, No. 22-cv-06019-GW-PD, 2022 WL 18359097, at *8 (C.D. Cal. Nov. 15, 2022) (denying the defendant's motion to dismiss the plaintiff's infringement claim based on patent eligibility but granting its motion to dismiss "willfulness allegations").

**B.  False Marking**

Defendants next argue that plaintiff's false marking claim should be dismissed because plaintiff has not alleged that defendants used marks with the intent to deceive consumers into believing that their product was plaintiff's patented product and because plaintiff has also not alleged a competitive injury.  (Doc. No. 28-1 at 7–8.)  In opposition, plaintiff contends that it has alleged that defendants' infringing product was unpatented because the patent that defendants claim covers the infringing product is invalid and the product does not specify a patent number. (Doc. No. 33 at 8.)  In reply, defendants point out that the only allegation of false marking on their part refers to an online posting for a different product than the allegedly infringing product. (Doc. No. 34 at 4; *compare* Doc No. 24 at ¶ 64, *with* Doc. No. 24 at ¶ 78.)

Title 35 U.S.C. § 292(a) prohibits entities from, "without the consent of the patentee, mark[ing] upon, or affix[ing] to, or us[ing] in advertising in connection with anything made, used, offered for sale, or sold by such [entity] within the United States . . . the name or any limitation of the name of the patentee, the patent number, or the words 'patent,' 'patentee,' or the like . . . ." Title 35 U.S.C. § 292(b) allows an entity which has "suffered a competitive injury as a result" of such false marking to "file a civil action . . . ." *Id.* "A party pleading [a] false marking claim under 35 U.S.C. § 292 must show:  (1) an unpatented article; (2) an intent to deceive the public; and (3) a competitive injury." *Urban Dollz LLC v. Lashify, Inc.*, No. 23-cv-01427-GW-AFM, 2023 WL 8292459, at *2 (C.D. Cal. Oct. 17, 2023) (citing *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011)).  Here, plaintiff's only factual allegation of an allegedly false marking is related to defendants' purported online listing.  (Doc. No. 24 at ¶¶ 78, 79, 81.) However, plaintiff has not alleged that the product referred to in defendants' online listing is the allegedly infringing product or some other version of it.  Nor does plaintiff otherwise allege that this apparently separate product also infringes on its '071 patent.  Accordingly, from the allegations of the FAC the court cannot determine whether plaintiff is asserting that the online listing which is the subject of this claim actually displays an unpatented article as is required to state a false marking claim.  This is because plaintiff has not alleged that the product in the online listing is unpatented.[4]  Because plaintiff has not alleged that the product which allegedly infringes upon the '071 patent is falsely marked as patented, plaintiff has not stated a cognizable claim for relief.  Accordingly, the court will grant defendants' motion to dismiss claim 2 of plaintiff's FAC.

**C.     Lanham Act**

"To state a claim for false advertising under Section 43(a) of the Lanham Act [15 U.S.C. § 1125(a)], [the plaintiff must] allege that (1) [the defendant] made a false statement of fact in a commercial advertisement; (2) the statement deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it was likely to influence the

---

[4]  In essence, plaintiff has merely alleged that defendant USA Products marketed some product as patented and has infringed on plaintiff's '071 patent with some other unpatented product, but not that defendant USA Products has marketed an unpatented product as being patented.

1   purchasing decision; (4) the false statement entered interstate commerce; and (5) [the plaintiff]

2   has been or is likely to be injured as a result of the false statement." *Enigma Software Grp. USA,*

3   *LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 (9th Cir. 2023) (citing *Southland Sod Farms v.*

4   *Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).  "To show falsity under the Lanham Act, a

5   plaintiff must allege that 'the statement was literally false, either on its face or by necessary

6   implication, or that the statement was literally true but likely to mislead or confuse consumers.'"

7   *Id.* (quoting *Southland*, 108 F.3d at 1139).

8         Defendants argue that plaintiff's Lanham Act claim should be dismissed because plaintiff

9   has not alleged that the alleged false statement—the use of the title "USA Products" despite

10   selling products manufactured in China—is a false statement of fact or has actually deceived or

11   has the tendency to deceive a significant number of people regarding the geographic origin of

12   their products.  (Doc. No. 28-1 at 9–10.)  They further argue that plaintiff has not sufficiently

13   alleged that this purportedly false statement was material in that it was likely to influence a

14   customer's purchasing decision, that defendants caused the false statement to enter into interstate

15   commerce, or alleged in a non-conclusory fashion that plaintiff had been or was likely to be

16   injured by the purportedly false statement.  (*Id.* at 10–11.)  In its opposition, plaintiff contends

17   that it has satisfied all five elements of a Lanham Act claim by alleging that defendants have

18   labelled their products under the company name USA Products, which falsely represents that the

19   geographic origin of defendants' products is the United States when the products were in fact

20   manufactured in China.  (Doc. No. 33 at 9–11.)  In reply, defendants aver that plaintiff must plead

21   false statements with particularity under Federal Rule of Civil Procedure 9 and has not adequately

22   alleged that any specific advertisement contained a false statement.  (Doc. No. 34 at 5.)

23         "[W]here a Lanham Act claim is predicated on the theory that the defendant engaged in a

24   knowing and intentional misrepresentation, then Rule 9(b) is applicable."  *23andMe, Inc. v.*

25   *Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018); *see also Vess v. Ciba-Geigy*

26   *Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("When an entire complaint, or an entire claim

27   within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading

28   requirements of Rule 9(b), a district court may dismiss the complaint or claim.") (citing *Bly-*

*Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *Gopher Media LLC v. Modern Doc Media*, No. 3:22-cv-00131-TWR-DDL, 2023 WL 350531, at *6 (S.D. Cal. Jan. 20, 2023) ("While the Ninth Circuit has not decided whether the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Lanham Act claims, the majority of district courts in this Circuit apply Rule 9(b) to claims that are grounded in fraud, such as false advertising claims arising under the Lanham Act.").

Here, plaintiff alleges that defendants have "willfully, intentionally, deliberately, and knowingly confused customers concerning the source or sponsorship of their products[.]"  (Doc. No. 24 at ¶ 100.)  Plaintiff also alleges that defendants' labeling of its products is "intended to divert sales of tie-downs" because consumers would mistake their products for "a genuine article" and that this constitutes "knowing deception of the public[.]"  (*Id.* at ¶¶ 94–96.)  Thus, plaintiff's false advertising claim sounds in fraud.  *See Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) (finding that the plaintiff's allegations sounded in fraud and were subject to Rule 9(b) pleading standards where the plaintiff had alleged that the defendants engaged in false advertising and sold bobbleheads under false pretenses); *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1102–03 (N.D. Cal. 2021) (finding that the plaintiff's allegations sounded in fraud and were subject to Rule 9(b) pleading standards where the plaintiff did not directly allege fraud but instead alleged that the defendant's acts were "willful, wanton, and calculated to deceive").  To survive defendants' pending motion to dismiss its Lanham Act claim, plaintiff must therefore meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted) (citing *Bly-Magee*, 236 F.3d at 1019).  "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)."  *Id.* (internal quotations omitted).  To satisfy the particularity standard of Rule 9(b), "a pleading must identify the who, what, when, where, and

1  how of the misconduct charged, as well as what is false or misleading about the purportedly

2  fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019

3  (9th Cir. 2020) (quotation marks omitted) (quoting *Davidson v. Kimberley-Clark Corp.*, 889 F.3d

4  956, 964 (9th Cir. 2018)).

5          1.      Rule 9(b) Particularity

6          In its FAC, plaintiff has alleged the "who, what, when, where, and how" required by Rule

7  9(b) with regards to the false statement it has alleged.  The "who" is alleged as all defendants.

8  (Doc. No. 24 at ¶¶ 85–100.)  The "what" is alleged as the labelling of defendants' products under

9  the name "USA Products."  (*Id.* at ¶¶ 86, 87.)  The "where" is identified as on defendants'

10  website.[5]  (*Id.*)  The "when" is somewhat less clear from the FAC, but plaintiff does allege that

11  the labelling occurred "at the time of committing the acts herein alleged," at least implying that

12  defendants' labelling of products with "USA Products" occurred during the sale of the infringing

13  product, which plaintiff alleges is still ongoing.  (*Id.* at ¶¶ 62, 86.)  Plaintiff's allegations

14  regarding defendants' website also permits a reasonable inference to be drawn that that the

15  alleged offending label was still on defendants' website at the time the complaint in this action

16  was filed.  (*Id.* at ¶ 87); *see TransFresh, Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009,

17  1019 (N.D. Cal. 2012) (finding that the plaintiffs had alleged the "when" for Rule 9(b) by

18  alleging that a statement on a website was "ongoing").  The "how" or "why" is alleged, in that

19  plaintiff alleges that the use of the term "USA Products" creates a false designation of the origin

20  of defendants' products.  (Doc. No. 24 at ¶ 89.)  Having found that plaintiff has adequately

21  alleged the "who, what, when, where, and how" elements required by Rule 9(b), the court

22  concludes that plaintiff has satisfied Rule 9(b)'s heightened pleading requirements for alleging

23  fraud.

24  /////

25  /////

26  _____

27  [5]  The court notes that in their briefing, the parties identify the logo of USA Products as being
present on its website, rather than on any particular product.  (Doc. Nos. 28-1 at 9; Doc. No. 33 at
10.)  However, the parties' analysis centers on particular products offered by defendants which

28  are manufactured in China.  (*See* Doc. Nos. 28-1 at 9–10; 33 at 9–10.)

1          2.          Deception

2          Defendants next argue that plaintiff has not plausibly alleged that the use of a logo on

3   their website that says "USA Products" is a false representation as to the geographic origin of

4   their products.  (Doc. No. 28-1 at 9.)  Defendants also represent that the infringing product's

5   labelling reads "Manufactured in China to USA Products Group, Inc. Specifications."  (*Id.* at 9.)

6   In its opposition, plaintiff appears to concede that defendants' products are labelled as being made

7   in China.  (Doc. No. 33 at 9.)  Plaintiff contends that the presence of the USA Products logo, even

8   if the labelled product also clearly indicates that it was made in China, constitutes a false

9   statement in the meaning of the Lanham Act.  (Doc. No. 33 at 9.)[6]

10         "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that

11   the statement was literally false, either on its face or by necessary implication, or that the

12   statement was literally true but likely to mislead or confuse consumers."  *Southland Sod Farms*,

13   108 F.3d at 1139.  A statement is deceptive if it "deceived or had the tendency to deceive a

14   substantial segment of its audience."  *Enigma Software Grp. USA, LLC*, 69 F.4th at 671 (9th Cir.

15   2023) (quoting *Southland Sod Farms*, 108 F.3d at 1139).  Plaintiff does not allege that any

16   consumer was actually deceived and the court finds that, accepting all plaintiff's allegations as

17   true, an inference cannot be drawn that a substantial segment of its audience would be deceived as

18   to the geographic origin of defendants' products.  The decision in *Culver v. Unilever United*

19   *States, Inc.* is instructive in this regard, though it analyzes a claim brought under California's

20   False Advertising Law rather than the Lanham Act:  there the court discussed whether the

21   labelling of a mustard product with various French symbology was deceptive as to the mustard's

22   place of origin.  *Culver v. Unilever U.S., Inc.*, No. 19-cv-09263-GW-RAO, 2021 WL 10382839,

23   at *9–11 (C.D. Cal. Jan. 21, 2011) (collecting and discussing federal court cases addressing

24   misleading labelling).  In *Culver*, the product in question had several prominent features which

25   could suggest a French origin, such as the use of the word Paris, an emblem for the city of Paris,

26   and various French words.  *Id.*  However, the court found that "[a] mere reference to a geographic

27

28   _____

[6]  The court notes that the FAC does not contain any allegation that any of defendants' products
are labelled as being "Made in China."

14

location does not imply a location of manufacture." *Id.* (citing *Forschner Grp., Inc. v. Arrow Trading Co.*, 30 F.3d 348, 351–55 (2d Cir. 1994) (holding that use of the phrase "Swiss Army" did not violate false advertising provisions of the Lanham Act because the phrase was not "geographically descriptive" where the knives were labeled as "Made in China"). Though plaintiff argues in his opposition that false statements cannot be cured by true statements elsewhere, numerous federal courts have found that ambiguity created by aspects of a product's labeling as to its geographic origin can be dispelled by explicit designations. *See Culver*, 2021 WL 10382839, at *9 (finding that the clear designation of the geographic origin of the mustard removed any ambiguity); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 391 (E.D.N.Y. 2017) (finding that allusion to historic roots of a product were "eclipsed by the accurate disclosure statement"); *Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 969–72 (D. Haw. 2019) (finding that the plaintiffs' allegations that the defendant labelled the product as Hawaiian and used Hawaiian imagery were insufficient to imply geographic origin without some indicia such as a map or address indicating a specific place that the product was produced).

Plaintiff cites to no authority, and the court has found none, suggesting that labelling a product with a company name which contains the word USA is a sufficient basis upon which to allege that a substantial segment of defendants' audience would believe that the product was manufactured in the United States. (Doc. No. 33 at 9–10.) Therefore, the court concludes that plaintiff has not alleged that defendants have made a representation which actually deceived or has the tendency to deceive a substantial segment of its audience and has not stated a claim for relief under the Lanham Act.

Accordingly, the court will grant defendants' motion to dismiss claim 3 of plaintiff's FAC.

### D.      Induced Infringement as to Defendant Jackson

Defendants argue that plaintiff's induced infringement claim should be dismissed because plaintiff has not alleged the personal culpability of defendant Jackson beyond his status as an official of defendant USA Products. (Doc. No. 28-1 at 5–6.) In its opposition, plaintiff argues that it has made specific allegations about the actions taken by defendant Jackson which make

15

1    him personally liable for inducing infringement of the '071 patent.  (Doc. No. 33 at 12.)  In reply,

2    defendants contend that plaintiff's allegations in this regard are merely conclusory claims that

3    defendant Jackson "directly participated" in defendant USA Products' activities or "made specific

4    decisions" for defendant USA Products.  (Doc. No. 34 at 6.)

5            "The 'corporate veil' may shield an officer of a corporation from personal liability for

6    inducement of patent infringement committed in the name of the corporation unless that officer

7    'actively assist[ed]' with the corporation's induced infringement."  *Ultratech, Inc. v. Ensure*

8    *NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 824–25 (N.D. Cal. 2015) (quoting *Wordtech Sys.,*

9    *Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010)) (alterations present

10   in original).  "Under 35 U.S.C. § 271(b), 'corporate officers who actively assist with their

11   corporation's infringement may be personally liable for inducing infringement' regardless of

12   whether piercing the corporate veil is appropriate."  *B-5, Inc. v. Accu-Tac, LLC*, No. 20-cv-

13   00532-PSG-KK, 2020 WL 5802380, at *2 (C.D. Cal. Aug. 26, 2020) (quoting *Manville Sales*

14   *Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)); *see also Wordtech Sys., Inc.*,

15   609 F.3d at 1316 (reiterating the holding of *Manville* that corporate officers can be held

16   personally liable "regardless of whether the circumstances are such that a court should disregard

17   the corporate entity and pierce the corporate veil").  "To state a claim for induced infringement, a

18   patentee must show first 'that there has been direct infringement, and second that the alleged

19   infringer knowingly induced infringement and possessed specific intent to encourage another's

20   infringement.'"  *Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-cv-01058-JLS-DHB,

21   2016 WL 5786936, at *7 (S.D. Cal. Oct. 4, 2016) (quoting *Insituform Techs., Inc. v. CAT*

22   *Contracting, Inc.*, 385 F.3d 1360, 1375 (Fed. Cir. 2004)).

23           Here, defendants argue plaintiff has not sufficiently alleged that defendant Jackson had the

24   specific intent to encourage infringement.  (Doc. No. 28-1 at 5–6.)  Specifically, they contend that

25   plaintiff has only stated threadbare allegations that defendant Jackson is the "sole person

26   responsible at USA Products."  (*Id.*)  "Naturally, direct evidence of an alleged inducer's specific

27   intent will often be impossible for a patentee to obtain at the pleading stage. '[S]pecific intent

28   may, of course, be demonstrated by circumstantial evidence.'"  *Footbalance Sys. Inc.*, 2016 WL

5786936 at *7 (quoting *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1354 (Fed. Cir. 2008)).  Plaintiff does allege that defendant Jackson had received technical drawings and a prototype of plaintiff's parachute cord tie-down which would later become the disclosure for the '071 patent.  (Doc. No. 24 at ¶¶ 44, 45.)  However, as explained above, these allegations are an insufficient basis upon which to assert that defendant Jackson had pre-suit knowledge of the '071 patent.  It is the allegation of facts supporting such knowledge that is required to state a claim that defendant Jackson had the specific intent to encourage pre-suit infringement.  *See Masimo Corp. v. Sotera Wireless*, No. 19-cv-01100-BAS-NLS, 2020 WL 2306587, at *8–10 (S.D. Cal. May 8, 2020) (analyzing whether the plaintiff had alleged that the defendant possessed pre-suit knowledge in determining whether the plaintiff had also alleged that the defendant had the intent required to actively induce infringement); *see also Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. 20-cv-02713-GW-SHK, 2020 WL 8173024, at *3–5 (C.D. Cal. Nov. 6, 2020) (finding that the plaintiff had not alleged that the defendant had pre-suit knowledge of a patent, dismissing the plaintiff's induced infringement claim and willful infringement claim based on the same analysis).  Accordingly, the court will grant defendants' motion to dismiss claim 4 of plaintiff's FAC.

**E.      Leave to Amend**

Finally, leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ. P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).  Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .").

In its opposition to the pending motion to dismiss, plaintiff requests leave to amend its FAC.  (Doc. No. 33 at 14.)  It is not clear that permitting plaintiff leave to amend to attempt to /////

1   cure the FAC's noted deficiencies would be futile, and defendants do not argue that leave to

2   amend should be denied.  Therefore, the court will grant plaintiff leave to amend its FAC.

3                                           **CONCLUSION**

4          For the reasons explained above,

5          1.       Defendants' motion to dismiss plaintiff's first amended complaint (Doc. No. 28) is

6                   granted in part as follows:

7                   a.       Plaintiff's willful infringement claim against defendant USA Products is

8                            dismissed;

9                   b.       Plaintiff's false marking claim against defendant USA Products is

10                           dismissed;

11                  c.       Plaintiff's Lanham Act claim against defendants USA Products and

12                           Jackson is dismissed;

13                  d.       Plaintiff's induced infringement claim against defendant Jackson is

14                           dismissed; and

15         2.       Within twenty-one (21) days from the date of entry of this order, plaintiff shall file

16                  either a second amended complaint or a notice of its intent not to do so.

17         IT IS SO ORDERED.

18  Dated:   **January 10, 2025**                    _____

19                                                   DALE A. DROZD
                                                     UNITED STATES DISTRICT JUDGE
20

21

22

23

24

25

26

27

28